**UNITED STATES DISTRICT COURT**

**DISTRICT OF MAINE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 06-25-P-H** |
| | ) | |
| **DENNIS FRIEL,** | ) | |
| | ) | |
| **DEFENDANT** | ) | |

**ORDER ON PENDING MOTIONS**

***1.   Notice of Appeal and Objections to Magistrate [Judge] Cohen's Denial of Motions and to His Participation in General*** *(Docket Items 148, 154)*

The objections are **OVERRULED**. Magistrate Judge Cohen is acting within his statutory authority, 28 U.S.C. § 636 (2000), and the Local Rules of this Court. The rulings he has made on nondispositive matters are neither clearly erroneous nor contrary to law. Fed. R. Crim. P. 59(a). On Judge Cohen's dispositive recommendations, I have made an independent *de novo* review, and I adopt his conclusions in the Memorandum Decision and Order on Motions to Compel Production and Recommended Decision on Motion to Dismiss (Docket Item 133) as my own. Fed. R. Crim. P. 59(b). I also reject specifically the defendant's argument that he can bring about the recusal of the Magistrate Judge by the defendant's own statements and behavior:

> [C]ertain colloquy between the Accused and the magistrate have embroiled the magistrate (even though he has attempted to hide this fact) which gives an appearance of <u>impropriety</u> and on these grounds alone is reason to step down. The very fact that J. Hornby made the statement at the end of an order, and was made part of the record, that the Accused is "anti-Semitic" clearly is reason enough for magistrate Cohen to recuse, even though this statement is not true there is still an "appearance of impropriety."

Objections at 3 (emphasis original). What I said was: "the defendant has begun making anti-Semitic utterances against Judge Cohen . . . . I will not tolerate either anti-Semitism or any contemptuous behavior. Any further documents that the defendant sends to the Court that contain anti-Semitic utterances will be **STRICKEN IN THEIR ENTIRETY**." <u>United States v. Friel</u>, 2006 WL 1793556,*2-3 (D. Me. 2006). Presumably the defendant's reference to a "colloquy" between the defendant and the Magistrate Judge refers to a closed *ex parte* hearing conducted by the Magistrate Judge on June 6, 2006, concerning the defendant's relationship with the standby counsel the court appointed in light of the defendant's insistence on proceeding without a lawyer. At that hearing, the defendant made an outrageous and unconscionable statement when the Magistrate Judge recessed the proceeding. Ex Parte Hearing Tr. 15:2, June 6, 2006 (Docket Item 109). Because the hearing was closed, I will not quote the statement. But the suggestion that Judge Cohen has "attempted to hide" what happened is ludicrous. It is a matter of record. Parties are not permitted to make outrageous statements against a judge and then use their own statements as a basis for recusal. <u>F.D.I.C. v. Sweeney</u>, 136 F.3d 216, 219-

2

20 (1st Cir. 1998); 13A Charles Alan Wright, et al., Federal Practice and Procedure § 3542 at 577-78 ( 2d ed. 1984).

## 2. *Motion for a Grand Jury Transcript of Indictment Proceedings of the Accused, and Reporter's Notes* (Docket Item 120)

The motion is **DENIED**. The defendant has shown no reason under Fed. R. Crim. P. 6(e) to justify disclosure. The assertions that "[t]he Accused took a 'general census' of the grand jury and believed they were not going to indict him," that "[t]he Accused saw at least 10 questionable—as far as legally qualified—grand jurors and needs a transcript in order to determine from questions asked and answers given if there was indeed at least 12 qualified grand jurors that voted to indict him," and that "[t]he Accused also needs to know what the prosecution told them after the Accused left the room" are not sufficient. See, e.g., United States v. Young, 955 F.2d 99, 107-8 (1st Cir. 1992) (no access to grand jury minutes required upon mere assertion of prosecutorial vindictiveness); United States v. Orbiz, 513 F.2d 816, 818-19 (1st Cir. 1975) (access requires "showing that some possible grounds for dismissal would be produced," "sufficient promise," "particularized need").

## 3. *Motion to Suppress and Request for Evidentiary Hearing (Franks v. Delaware) and Request for Oral Argument* (Docket Item 108)

The defendant moves to suppress evidence growing out of a search of his residence pursuant to a warrant. He also asks for a Franks evidentiary hearing (Franks v. Delaware, 438 U.S. 154 (1978)), and for oral argument. He advances the following bases:

3

(1) The state judge who signed the search warrant was not neutral and detached, because previously "he had kicked the Accused out of his courtroom for calling him a liar." Mot. to Suppress at 1. The defendant says that technical errors in the warrant also demonstrate that the state judge failed to perform his neutral and detached role;

(2) The affidavit in support of the warrant fails to show probable cause, particularly in failing to show credibility or reliability of confidential or anonymous informants or in having other corroboration;

(3) The affidavit lacks particularity in referring to the place to be searched or who was to be arrested;

(4) The search exceeded the scope of the warrant, first in the seizure of a weapon near the defendant's bed, whereas the marijuana was downstairs in the defendant's office, and second in extending the search to premises in the same building that belonged to the defendant's adult son;

(5) The assertions in the affidavit were false and thus provided neither probable cause for the search nor justification for a no-knock nighttime search;

(6) The police conducting the search did not show the defendant the warrant and interrogated him with a gun to his head and without administering Miranda rights.

The motion and requests are **DENIED**.

First, the defendant has made no showing sufficient to justify a Franks evidentiary hearing on the truth of the affidavit that generated the warrant. The defendant's motion contains only the defendant's unsworn assertions, many of them concerning matters of which he has no personal knowledge.[1] "A *Franks* hearing is required only if the defendant makes a 'substantial preliminary showing (1) that a false statement in the affidavit has been made knowingly and intentionally, and (2) that the false statement is necessary for the finding of probable cause." The defendant's offer of proof must be "more than conclusory"; it "should be supported by '[a]ffidavits or sworn or otherwise reliable statements of witnesses." United States v. Scalia, 993 F.2d 984, 986-87 (1st Cir. 1993). The defendant has satisfied none of those requirements.

Second, there is no showing that the state judge failed to perform his reviewing function in a neutral and detached manner. Even if the judge had previously disciplined the defendant for courtroom conduct (there is nothing but the defendant's unsworn assertion that this is so), that previous judicial ruling does not prevent the judge from acting in further matters concerning the defendant. See United States v. Young, 877 F.2d 1099, 1104 (1st Cir. 1989) (previous action by state

---

[1] Just as I do not credit the defendant's unsworn assertions, I do not credit the evidentiary assertions in the government's objection that are not contained in the affidavit and warrant. See, e.g., the description of what allegedly happened at the time of the search. Gov't Objection at 3 (Docket Item 145).

5

judge "does not seem to us to have any significant bearing on [his] disinterest when he considered the warrant application"). The alleged technical errors either do not exist or are irrelevant. The provision that "This warrant may be executed during daytime or nighttime hours of 9:00 PM to 7:00 AM" is not internally inconsistent; it means simply that the warrant can be executed during the daytime, or it can be executed during the nighttime, defined as 9:00 p.m. to 7:00 a.m. The assertion that "[t]his residence is personally known to your affiant who will accompany other officers during the execution of this search warrant" should not have been contained in the Warrant, but it is a harmless transposition from the description contained in the affidavit.

Third, the affidavit was sufficiently particular in describing the premises to be searched, namely the defendant's residence, with address. Because it was not an arrest warrant, it did not need to refer to who, if anyone, was to be arrested. The defendant's assertion that his adult son had property rights in a portion of the premises has no effect. If items were improperly seized on someone else's property, it is that person who has the right to object, not this defendant. In his reply, the defendant says that his reference to his son's property rights in the building was only to demonstrate that the Affiant lacked familiarity with his residence. Def.'s Reply to Gov't Response to the Accused Mot. to Suppress the Evid. and to Have a Franks Hr'g (Docket Item 152) at 12. Even so, the affidavit provided probable cause to search the identified premises, and the Warrant was sufficiently particularized.

Fourth, although the affidavit did not provide the state judge with specific information about the two unidentified informants' reliability and veracity, the "totality of the circumstances," Illinois v. Gates, 462 U.S. 213, 214 (1983), demonstrated probable cause. The first informant was an anonymous caller to a recorded hotline at the state drug enforcement agency. The second informant, although not named, was facing criminal drug charges and spoke to a detective at the Sheriff's Office. "[A]n informant's tip can establish probable cause even though the affidavit does not contain information about the informant's past reliability." United States v. Greenburg, 410 F.3d 63, 67 (1st Cir. 2005). Here, each informant independently provided first-hand specificity and detail about what he saw in the defendant's household,[2] see United States v. Taylor, 985 F.2d 3, 6 (1st Cir. 1993); Greenburg, 410 F.3d at 67; their statements were generally consistent with each other;[3] and the informant facing criminal charges and seeking favorable police treatment in return for cooperation had an incentive to provide truthful information so as to receive that favorable treatment. He also implicated himself in the information he provided. See Greenburg, 410 F.3d at 67-68. Finally, law enforcement's knowledge of previous trafficking activities by the defendant provided

---

[2] For example, the presence of baggies, scales, and marijuana; the location of the materials as being in the defendant's office at the residence; and in one case, the general layout of the house.

[3] Independently, each informant specified marijuana as the controlled substance in question, referred to its location in the defendant's office (in one case, the reference was to a room "where there was a large desk"), and described the presence of scales and plastic baggies. (Whether there *(continued on next page)*

7

additional context for a probable cause determination.[4] In the end, the standard is whether the totality of the circumstances demonstrated "a *fair* probability that contraband or evidence of a crime will be found in a particular case." United States v. Barnard, 299 F.3d 90, 93 (1st Cir. 2002), quoting United States v. Zayas-Diaz, 95 F.3d 105, 111 (1st Cir. 1996), quoting Illinois v. Gates, 462 U.S. 213, 238 (1983). Relevant factors in the absence of specific information about credibility and veracity of informants are whether the provided information "indicates first-hand knowledge," Barnard, 299 F.3d at 93, whether it is derived from informants' personal observation rather than hearsay, United States v. Caggiano, 899 F.2d 99, 103 (1st Cir. 1990); Gates, 462 U.S. at 234, whether there is corroboration (as here between the two informants), Barnard, 299 F.3d at 94-95, the role of a criminal background check, id. at 95, and whether police met with the informant (as they did here with the second cooperating informant) such that they knew his identity and could hold him responsible if he provided false information, Greenburg, 410 F.3d at 67. Taking all these factors into account, and giving due deference to the review by the judge issuing the warrant, Barnard, 299 F.3d at 93, I conclude that probable cause existed.

---

were "two scales" (first informant) or a "set of scales" (second informant) does not destroy this consistency.)

[4] The assertion that copies of the defendant's convictions were attached to the Affidavit appears to be incorrect, but their absence does not remove probable cause, the officer having detailed the previous convictions and sworn that he found them in a criminal history check through NCIC and SBI.

Fifth, the Supreme Court's recent decision, <u>Hudson v. Michigan</u>, 126 S. Ct. 2159 (2006), makes clear that any violation of the constitutional knock-and-announce requirement does not justify suppression if the evidence was the product of a search pursuant to a warrant. That is the case here.

Sixth, the location of the seized weapon does not justify suppression. (The defendant asserts that it was upstairs by his bed, whereas the controlled substance was downstairs in his office.) The Warrant identified the scope of the search as the entire residence. Thus, the officers were entitled to search for drugs in the bedroom. It is true that the portion of the warrant dealing with property "to be seized" spoke of "[f]irearms, ammunition or other devices . . . which are found in proximity to" drugs, drug paraphernalia, and related business records. (Contrary to the defendant's argument, the Warrant spoke of "proximity," not "close proximity." The latter phrase appeared in the affidavit, not in the Warrant.) But the affidavit also made clear that the police knew that the defendant was a felon previously convicted of both drug trafficking charges and illegal possession of a firearm. Therefore, once law enforcement reached the head of defendant's bed pursuant to a search warrant that included the entire residence, they were entitled to seize the weapon in "plain view," because given the defendant's status as a felon, it was illegal for him to possess the firearm and, therefore, it was reasonable for them to believe that the gun was evidence of a crime. <u>United States v. Jones</u>, 187 F.3d at 220. "'Plain view' seizures are lawful if (1) the seizing police officer lawfully reached the

9

position from which he could see the item in plain view; (2) the seizure satisfied the probable cause standard; and (3) the seizing officer had a 'lawful right of access to the object itself.'" United States v. Antrim, 389 F.3d 276, 283 (1st Cir. 2004), quoting United States v. Jones, 187 F.3d 210, 221.

Seventh, the defendant has provided no authority for suppressing evidence discovered pursuant to a warrant merely because the police did not show the defendant the warrant (assuming that his assertion to that effect is true). In fact, the law is contrary to the defendant's position. United States v. Antrim, 389 F.3d at 282.

Eighth, since the government says that the defendant was not interrogated at his residence, I conclude that it does not have any statements made by the defendant during the search that it intends to use against him. Therefore, the voluntariness of any such statements (if they occurred) and the failure to administer Miranda warnings (Miranda v. Arizona, 86 U.S. 1602 (1966)) at that time are irrelevant on this motion to suppress evidence that was seized pursuant to the Warrant.[5] Obviously, should the government attempt to use anything the defendant said during the search, I would have to examine whether the defendant has any Miranda or voluntariness arguments to prevent the government's doing so.

---

[5] In his Reply, the defendant adds that the Maine State Police Tactical Team was used during the search without explicit authorization in the warrant itself. That fact has no bearing on the constitutionality of the search and the admissibility of what was discovered and seized.

10

As a result, the defendant's motion to suppress and his request for an evidentiary are **DENIED**.

The request for oral argument is **DENIED**. The defendant has had more than sufficient opportunity to argue his motion, including permission to file a 32-page Reply Memorandum that I have read and considered.

**SO ORDERED.**

**DATED THIS 5TH DAY OF SEPTEMBER, 2006**

/s/D. Brock Hornby
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**